Good morning counsel. Good morning your honor. Michael Clensing. This is a dullously named complaint of John Doe. I'd like to reserve three minutes if I may for rebuttal. This is a case about an unaccountable bureaucracy that engaged in a pattern of behavior that denied John Doe's constitutional rights for an inexplicably prolonged period of time, more than 27 months. In the first five lines of the trial court's decision, the words rifle, firearm, second amendment, and keep and bear arms all appear. However, this is not in its essence a gun case. Your honor, we've made a number of points in our briefs and we think they'll all merit your attention but the utterly decisive point is the one that I would like to address first and that is the factual find the factual findings on the role of a jury in all inferences should have been made in favor of Mr. Doe, especially in a search in 1983 case and in the context of a motion for summary judgment. Then I'll plan to address the issue of due process or more accurately the lack of due process and third public policy considerations raised by this case. And finally, the fact that the burden to correct the record was not on the record-keeping agency, it was on the hospital that had erroneously created the record in the first place. Let me return now to my first point. First of all, by parsing the two letters that are on page 182 and the other in late 1984, in the record at page 262, and totally separating that analysis from his analysis of the shockingly candid admission made by defendant Chris Stewart's foot, the trial judge took the case away from the jury. A reasonable jury could have concluded by preponderance of the evidence if they found plaintiff to be a credible witness and of course he is for the purposes of MSJ, that the 2012 and 2014 letters were significantly different in the motive for writing the complying letter in 2014 was less than altruistic. So counsel, in order for your client to survive summary judgment, he had to raise a material issue of fact regarding deliberate indifference. So what in the record, in your view, raises a material issue of fact regarding deliberate indifference? First of all, if you read the account of the 27 months of knocking on the door, being sent down the hall, being told that the secretary, the party secretary said so-and-so has instructed me not to allow them to talk, not to allow you to talk to them, and most specifically, Chris Stewart's foot, the number two administrator at the hospital, saying we're never going to change your record. We have, in assuming that what he says is true for purposes of a motion for summary judgment, we have the basis simply by that statement for getting before a jury. He didn't change the record. Pardon? The fact that he did change the record negates the fact that they never were going to change the record because the records were in fact changed. Good point, except for one thing. The first letter was written in 2012. Why did it take them 27 months to do a letter that was acceptable to DOJ? Why couldn't the hospital administrator have picked up the phone, called DOJ's record unit, and said, why did you announce this letter? What do we need to do to make this mistake corrected? It would just be an idea. It would just be a show of deliberate indifference, though. If that isn't deliberate indifference, knowing that you made a mistake, knowing that the recordskeeping center bounced your first letter, you're indifferent if you say, huh, well, then let's just do nothing but let's beat them around the tree and maybe sooner or later you'll go away. Then the second letter is written, but after knocking on the door, knocking on the door, knocking on the door, the attorney brought in an attorney's letter saying, please, don't make us sue you. Please correct the record, and ignoring those entreaties. And only after the case is filed in federal court where the attorney general is named as a defendant by myself, for the sole purpose of the court having jurisdiction to order the DOJ to correct the record, and the assistant attorney general to whom the case was assigned working to get the record corrected, and the judge leaning on the hospital, finally, several months after the lawsuit is filed, a second letter is written, which does what the first letter should have done, and results in a change. Now, if that's not indifference, I don't know what the definition of indifference would be. Correct. Pardon? Pardon? Right, I understand, but my problem is that it seems like the guilty party here is really DOJ. Is? Is DOJ? Not at all. The DOJ is simply a record keeper. They have the function of retaining the record. It's the individual. When a proper correction letter was written, it wasn't. The second letter was a proper correction letter. It was. It was because of the DOJ requirements of what the DOJ officials wanted in the letter, right? DOJ was passive. They simply had requirements. Semper Firens ignored the requirements, submitted the letter, hoped John Doe would go away. He didn't. He refused to write a circuit letter until pressure was put on by the attorney general and by a federal judge, and then they changed the record, and they say, what's 27 months? Counsel, wasn't there a lot of kind of like red tape involved in terms of getting with Semper Firens and getting them to correct it? Because initially when they wrote the first letter in 12, that kind of showed the good faith on their part in trying to correct things, and wasn't there also a legislative change that kind of complicated things in this case? And then ultimately the district judge said that this does show some negligence, but it doesn't rise to the level of deliberate indifference. If that were true, then why did Chris Harriswood say we're never going to change the record and then have to do so later on when a federal judge leaned on Semper Firens to write letters that would satisfy the DOJ's requirements? The DOJ was passive here. The DOJ could be seen as the empty chair in a criminal case where the method of passing away responsibility for what happened is to blame the other perpetrator who is not present. How secure do you think you've been in the 57 sentences? Do you want to save that for rebuttal? Yes, as soon as I finish my sentence. And in this instance, there was no second-chair defendant who could potentially be liable, ever. Thank you, counsel. I am pleased to report Nancy Gray on behalf of the county defendants, which includes Semper Firens, the local county mental health facility, Asher George and Chris Steren Foots, the doctors who serve in administrative capacities at the facility were dead in 2012. One thing that was overlooked in the initial discussion of the case, on behalf of John Doe, is that in fact, within days of Mr. Doe approaching the facility in February of 2012, saying there seems to be a problem here because I'm being denied purchase of a gun, but I was only 5150, which carries a five-year ban. And we're being told that I was 5250, which carries a lifetime ban. Again, only under federal law. State law, both have a five-year ban. What happened was the local facilities were sent instructions to immediately report, whether it be a 5150 or 5250. When there is a 72-hour time frame for a 5150 and not sufficient improvement, staff can certify that someone needs to be held for another 14 days under 5250, under the California Welfare and Institution Code. But that is only allowed to be effective if the individual, the patient, does not apply for habeas corpus or is given a hearing. In this case, he was characterized as 5250. Is that correct? No, he was properly classified in his records as certified under 5250 for three days. What he didn't have was a certification review hearing. And in that time period, in 1999, the local facilities were told, report this as soon as someone is classified as 5250. Now, as Your Honor had indicated, there was a change. Now the local facilities are told, don't report until there is a review hearing. Because what's important under the federal database is whether there's been a hearing. So someone can be 5150, five-year ban under state law, federal law. 5250, five-year ban under state law, federal law. If there has been a review hearing or habeas corpus. The problem here is that there had not been, at that time, there had not been a hearing. So there was no Weinstein ban, but the number was the same. Exactly. And he was 5250 until he agreed to go voluntary. But when he agreed to go voluntary, was there a mechanism to reflect at that point that he wasn't 5250 anymore? No. Again, the state provided the reporting forms. The Department of Justice, which is one of those, exactly, which, as one of your honors noted, the state's immune from money damages in these cases. And so here we are with the county and two county employees. And, in fact, even more evidence of good faith by the county, the minute that Don Doe came and complained, a ward clerk in February of 2012, again, right when he comes, sends a correction form to show not that John Doe was ever certified as 5250, which, of course, he was. He just didn't have the certification review hearing that would have prompted the federal ban, but to show that the reportable hospitalization in 1999 was 5150 rather than 5250. What about Appalachian Council's reference to doctors that put a statement that records were never going to be changed? Your Honor, respectfully, we're mindful that we're on summary judgment. Right. So we're not in a position to dispute anything like that. And if a statement is taken at face value, why does that not enhance deliberate indifference? It certainly doesn't create a question, a material question of fact, as to what actions the county took. Within days, the county sends a correction form. Then the counties ask for a letter. The county writes the letter. The undisputed fact is no further contact is made by DOJ to the county until counsel for DOJ, through me, requests another letter from Dr. George. And Dr. George writes the letter. What's the reference? The 27-month reference that Appalachian Council is making? Again, that's in DOJ, and everything it needed to correct it, it didn't correct. And then, as Judge Donato properly concluded, essentially DOJ then asked for another letter that told them everything they needed to know, that told them the same thing that they had known for 20 years. I would say it was the basic requirements of DOJ that the county was trying to comply with, exempt, satisfy whatever information DOJ wanted to make the classification. Exactly. And there's no dispute whatsoever. It would be one thing if there was some evidence at all that DOJ, at any time, requested something further from Dr. George or Dr. Stearns' foot during that period. And again, these are lifetime county mental health professionals, and we're mindful that we're on summary judgment. Otherwise, it would be more fine to admit those kind of statements were made. But for purposes of this particular issue, whether or not those statements were made is irrelevant, as Judge Donato indicated, because what the record shows, and in fact, John Doe, when the initial correction report is made, says how grateful he is for the county acting so quickly. And what happens then is the state misprocesses that first form, and it creates the new 5150 as of 2012, which would mean during all those 27 months, nothing was going to happen anyway until the state properly processed the correction form. So we have a county trying to facilitate highly reporting as the state urges it to do. And what happens is, as mentioned in Dr. George's declaration, which is part of the record, after Sandy Hook, there was a real push, or excuse me, Virginia Tech, there was a real push to make sure that 5250s were all reporting said to be made. There was never any push to go back and see if a 5250 had been reported without a review hearing. So, again, that's what the county is leaned upon by the Department of Justice. If your honors have any questions, it would be, here's another quick ask. Thank you, Rebuttal. There was an injury in March of 2012. There was an attempt by a clerk person to correct the error that didn't cut it with DOJ. It wasn't sufficient. There was then a letter from the hospital administrator. It's frankly hogwash to say that between the time of that initial letter and the time of the second letter, nothing brought to the hospital's attention that this man was being denied his constitutional rights. Read the declaration of John Doe to the point where there are exhibits that exceed C and go back to A, A, B, B, C, C, and so on. He was saying, for God's sake, correct the mistake. You didn't correct it. The DOJ said you didn't correct it. They refused to give him a copy of the DOJ letter. They refused to give him a copy of his medical file. The medical file he eventually got was incomplete. It seems incomprehensible that there was no animus on the part of the hospital to punish this man who in 1999 had hit a psychiatrist who had taken him behind the lockdown doors before there was any reason to do so. It was foolish to hit a psychiatrist, but the retribution for doing so went on and on and on. He should have been reclassified in 1999. He wasn't. He should have been reclassified in 2012. He wasn't. There is a difference here.
judges: Schroeder, Rawlinson, Drain